CRAIG H. MISSAKIAN (CABN 125202)
United States Attorney

MARTHA BOERSCH (CABN 126569)
Chief, Criminal Division

ROLAND CHANG (CABN 271511)
Assistant United States Attorney

    450 Golden Gate Avenue, Box 36055
    San Francisco, California 94102-3495
    Telephone: (415) 436-7108
    Fax: (415) 436-7027
    Roland.Chang@usdoj.gov

Attorneys for United States of America

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| UNITED STATES OF AMERICA, | ) | CASE NO. 23-CR-00210-EMC |
|---|---|---|
| Plaintiff, | ) ) ) | **UNITED STATES' SENTENCING MEMORANDUM** |
| v. | ) ) | Hearing Date: October 30, 2025 |
| HENRY MULLER, | ) ) | Time: 9:00 a.m. |
| Defendant. | ) ) ) | Courtroom: No. 5, 17th Floor Judge: Hon. Edward M. Chen |

**TABLE OF CONTENTS**

I.    INTRODUCTION ...................................................................................................................1

II.   PROCEDURAL HISTORY....................................................................................................1

III.  OFFENSE CONDUCT AND SENTENCING GUIDELINES CALCULATION........................1

      A.    Muller Admitted the Following Facts in His Guilty Plea Application ..............................1

      B.    The San Mateo County Sheriff's Investigation ................................................................2

      C.    The Federal Investigation and Indicted Charges ...............................................................3

      D.    The PSR Accurately Calculated the Offense Level and Criminal History Category .....................................................................................................................5

IV.   SENTENCING RECOMMENDATION .................................................................................7

      A.    Legal Standard .................................................................................................................7

      B.    Probation's Recommendation..........................................................................................8

      C.    Government's Sentencing Recommendation.....................................................................8

            1.    Muller's History and Characteristics Are Aggravating Factors ............................8

            2.    The Other Section 3553(a) Factors Support the Government's Recommendation .....................................................................................................11

            3.    The Court Should Impose a Suspicionless Search Condition...............................14

VI.   CONCLUSION....................................................................................................................15

# TABLE OF AUTHORITIES

## CASES

*Ashcroft v. Free Speech Coalition*, 535 U.S. 234 (2002) .......................................................... 8

*Concepcion v. United States*, 597 U.S. 481 (2022) ................................................................. 9

*McKune v. Lile*, 536 U.S. 24 (2002) ...................................................................................... 15

*New York v. Ferber*, 458 U.S. 747 (1982). ............................................................................ 8

*Samson v. California*, 547 U.S. 843 (2006).......................................................................... 15

*United States v. Betts*, 511 F.3d 872 (9th Cir. 2007) ............................................................ 15

*United States v. Carty*, 520 F.3d 984 (9th Cir. 2008) ............................................................ 7

*United States v. Cervantes*, 859 F.3d 1175 (9th Cir. 2017) .................................................. 15

*United States v. Gibson*, No. 4:14-CR-00217-JD-1, 2016 WL 6873466
    (N.D. Cal. Nov. 22, 2016)............................................................................................... 15

*United States v. Kimbrough*, 522 U.S. 85 (2007) .................................................................... 7

*United States v. Kincade*, 379 F.3d 813 (9th Cir. 2004)....................................................... 14

*United States v. Kriesel*, 508 F.3d 941 (9th Cir. 2007)......................................................... 14

*United States v. Vanderwerfhorst*, 576 F.3d 929 (9th Cir. 2009) ........................................... 9

*United States v. Weber*, 451 F.3d 552 (9th Cir. 2006)........................................................... 15

## STATUTES

18 U.S.C. § 2251(a) ............................................................................................................. 1, 7

18 U.S.C. § 2252(a)(2).......................................................................................................... 1, 7

18 U.S.C. § 3553(a) .......................................................................................................... 7, 8, 11

18 U.S.C. § 3661.................................................................................................................... 9

## OTHER AUTHORITIES

U.S.S.G. § 1B1.4.................................................................................................................... 9

U.S.S.G. § 2G2.1 ............................................................................................................. 5, 6, 12

U.S.S.G. § 2G2.2 ................................................................................................................. 5, 6

U.S.S.G. § 4B1.5.................................................................................................................. 6, 7

U.S.S.G. § 6A1.3.................................................................................................................... 9

## I.      INTRODUCTION

The defendant Henry Muller is a thirty-four (34) year old man who is directly responsible and personally accountable for the traumatic sexual abuse of several adolescent boys, including hands-on abuse of multiple minor victims.  In at least two instances, he surreptitiously recorded his abuse and then distributed that child pornography to another individual.  In another instance, he solicited and encouraged a minor to sexually abuse his seven (7) year old younger brother, which was photographed and then sent to Muller.  Muller's conduct was deeply harmful to these victims and their families, causing humiliation, disgust, shame, paranoia, and debilitating anxiety.  He deserves the full weight of the Court's condemnation for his exploitation of these victims.  Given Muller's relatively young age, protecting the public and deterring Muller's future abuse and exploitation of children are paramount concerns for the government.  *See* 18 U.S.C. § 3553(a)(2)(B) and (C).

For the reasons below, the government respectfully recommends that the Court sentence Muller to: (i) a term of imprisonment of 420 months; (ii) supervised release for life, to include a suspicionless search condition; (iii) restitution to be determined later; and (iv) a special assessment of $400.

## II.     PROCEDURAL HISTORY

On July 12, 2023, a federal grand jury issued a four-count indictment against Muller charging him with two counts of production of child pornography, in violation of 18 U.S.C. § 2251(a), one count of distribution of child pornography, in violation of 18 U.S.C. § 2252(a)(2), and one count of receipt of child pornography, in violation of 18 U.S.C. § 2252(a)(2).  Dkt. 1.  On January 9, 2025, Muller pled guilty to all the counts charged in the indictment.  Dkt. 38.  There is no plea agreement in this case.  PSR ¶ 3.[1]  Sentencing is scheduled for October 30, 2025 before this Court.  Dkt. 52.

## III.    OFFENSE CONDUCT AND SENTENCING GUIDELINES CALCULATION

### A.      Muller Admitted the Following Facts in His Guilty Plea Application

Muller admitted to the following facts in his Application for Permission to Enter Plea of Guilty and Order Accepting Plea.  *See* Dkt. 45.

---

[1] "PSR" shall refer to the Second Revised Presentence Investigation Report filed at Dkt. 51.

U.S.' SENTENCING MEMO                     1
23-CR-00210-EMC

**Counts One and Two (Production of Child Pornography).** On July 12, 2022 and July 13, 2022, Muller "unlawfully used and persuaded a minor, 'Minor 1,' to engage in sexually explicit conduct and produced video recordings of the conduct using a phone and materials transported in and affecting interstate and foreign commerce and the depiction was transmitted electronically via the [I]nternet and interstate commerce." *Id.* ¶ 5.

**Count Three (Distribution of Child Pornography).** On July 27, 2022, Muller "knowingly distributed and caused to be shipped and transported electronically a video of a minor engaged in sexually explicit conduct." *Id.* "The production of the video involved the use of a minor engaging in sexually explicit conduct." *Id.* Muller "knew the video was of sexually explicit conduct, and that at least one of the persons engaged in sexually explicit conduct in the video was a minor." *Id.*

**Count Four (Receipt of Child Pornography).** On October 17, 2022, Muller "knowingly received electronically via the Internet a visual depiction of a minor, 'Minor 2,' engaged in sexually explicit conduct, and the picture was shipped and transported in and affecting interstate commerce." *Id.* "The production of such visual depiction involved the use of a minor engaging in sexually explicit conduct." *Id.* Muller "knew that such visual depiction was of sexually explicit conduct, and that at least one of the persons engaged in sexually explicit conduct in such visual depiction was a minor." *Id.*

### B.    The San Mateo County Sheriff's Investigation

"In December 2022, detectives from the San Mateo County Sheriff's Office interviewed an 18-year-old subject[2] of a child exploitation investigation, not associated with the instant offense." PSR ¶ 6. "The subject[] disclosed that when he was 17 years old, he had sexual intercourse with a male he met on Grindr, who was later identified as Henry Muller." *Id.* "During the interview, the subject indicated that Muller boasted to him that he had "full on sex" with a 15-year-old boy (Minor 1)." *Id.* "The subject explained that Muller told him that he drove Minor 1 home after and that the police were at the house because Minor 1's mother had been worried when she realized he was not home."

The San Mateo investigation "revealed that Muller was listed as a suspect in a case of lewd and lascivious acts involving Minor 1 from earlier that year." PSR ¶ 7. Law enforcement interviewed

---

[2] The government shall refer to this individual as the "Uncharged Subject" herein.

Minor 1 and learned that Muller had engaged in sexual acts with the 15-year-old boy in July 2022 and recorded videos of the acts. *Id.* Minor 1 expressed fear that the videos would be leaked. *Id.* Muller was 31 years old at the time he engaged in sexual acts with Minor 1. *Id.*

**State Search Warrant.** "On December 22 and 23, 2022, detectives from the San Mateo County Sheriff's Office executed a search warrant at Muller's residence, his vehicle, person, and [his] locker at San Francisco International Airport, where he was employed." PSR ¶ 8. "Among the items that were seized, were thirteen electronics devices, including a Samsung Galaxy A02 cellphone." *Id.*

## C.    The Federal Investigation and Indicted Charges

"The devices were subsequently searched, and agents located: evidence of production of child sexual abuse material (CSAM) with at least two minor victims; evidence that Muller had committed sexual acts with at least four minor victims, including a 13- to 14-year-old; receipt and distribution of CSAM; 65 CSAM videos; 835 CSAM images; and additional chats and conversations demonstrating Muller's sexual interest in minors, including prepubescent child victims." PSR ¶ 8. Law enforcement's investigation identified the following facts in support of the indicted charges in this case.

**Counts One and Two (Production of Child Pornography).** "[O]n July 12, 2022, Muller met Minor 1, who was 15-years old at the time on Grindr and arranged to meet with him." PSR ¶ 9. At the time, Muller was thirty-one (31) years old. "At approximately 2:00 a.m., Muller picked up Minor 1 and brought him to his residence in San Francisco." *Id.* Muller had sexual intercourse with Minor 1, brought him to McDonald's for breakfast, and took him back home around 7:00 a.m." *Id.* "Minor 1 told Muller he was 15-years old, and Muller advised it was okay."

"The next night, Muller picked up Minor 1 again and had sexual intercourse with him." *Id.* "On both occasions, Muller recorded himself engaging in the sexual acts with Minor 1." *Id.* "The second night, Muller dropped off Minor 1 at his home." *Id.* "However, the police were waiting with Minor 1's mother. Muller dropped off Victim 1 at the corner so the police would not see him."

A digital forensic examination of Muller's cellphone identified at least four sexually explicit video recordings and one image file of Muller engaged in sexual acts with Minor 1. PSR ¶¶ 10-11. In sum, Muller used and persuaded Minor 1 to engage in sexually explicit conduct and made a video recording of these acts on two separate occasions, July 12, 2022 and July 13, 2022. *See id.*; Dkt. 45 ¶ 5.

**Count Three (Distribution of Child Pornography).** Muller did not simply produce child pornography—he distributed and bragged about it. On July 27, 2022, he distributed the video recordings and image file of himself engaged in sexual acts with Minor 1 to the Uncharged Subject in a conversation detailed below. PSR ¶ 11.

> MULLER: I fuxked a 15 yo the other night but when I dropped him off at his house the cops where there so I told him to gtfo and deleted his account
> MULLER: Wanna see me fuxking him lol
> MULLER: I love your lil boy dick
> Uncharged Subject: Can I see? If you have the video
> MULLER: Beg for it
> Uncharged Subject: Please sir I'm your good pup I really want it sir please
> Uncharged Subject: Can I see
> Uncharged Subject: I'm ur good doggy
> MULLER: His parents found out and we deleted each other from social media he got in trouble cause I left huskies on him.

*Id.*

**Count Four (Receipt of Child Pornography).** Muller's "cellular device [also] revealed his sexual interest in prepubescent children." PSR ¶ 12. Law enforcement identified additional conversations between Muller and the Uncharged Subject. *See id.* On October 17, 2022, "Muller received child pornography from [U]ncharged [S]ubject, including a sexually explicit image of [the Uncharged Subject's] 9-year-old younger brother [hereinafter Minor 2]." *Id.* While discussing Minor 2, Muller discussed wanting to "play" with Minor 2 and getting Minor 2 "high or drunk" so that he did not remember. *Id.* An excerpt of that conversation is detailed below.

> Uncharged Subject: soo want a pick of my bro
> Uncharged Subject: heh
> MULLER: Yeah
> MULLER: Lol and what you do today him
> Uncharged Subject: naughty
> Uncharged Subject: or normal
> MULLER: Yall play together alot that's so fuxking hot
> MULLER: Naughty
> MULLER: And then normal lol
> Uncharged Subject sends an image of CSAM, depicting a hand spreading the buttocks of a prepubescent minor, displaying his anus.
> Uncharged Subject: Hehe
> Uncharged Subject sends a clothed picture of a smiling prepubescent [Minor 2]
> Uncharged Subject: and thats him
> MULLER: God pup we should use him ahaha

MULLER: He so cute
Uncharged Subject: hes still a virgin
Uncharged Subject: sadly
Uncharged Subject: he wont let me fuck
MULLER: Age
MULLER: Hmm we csn still play with him together he looks so cute and innocent let's fucking play with him in between us hehe
Uncharged Subject: guess his age

*Id.*

### D.    The PSR Accurately Calculated the Offense Level and Criminal History Category

The government agrees with Probation's offense-level calculation and grouping analysis in the PSR (see below).  Counts 1 and 3 are grouped "because one of the counts embodies conduct that is treated as a specific characteristic in, or other adjustment to, the guideline applicable to another of the count(s)."  PSR ¶ 24 (citing U.S.S.G. § 3D1.2(c)).  Here, "Muller produced an image of child pornography of [Minor 1] on July 12, 2022 and distributed the image on July 27, 2022."  *Id.*  Count 2 does not group with any other counts.  *See id.* ¶ 25.  Count 4 (Count Group 3) does not group with any other counts because it involved the receipt of child pornography images of Minor 2, which are not named in any other count of the indictment.  *Id.* ¶ 26.

**Count Group 1:  Production of Child Pornography (Count 1 – July 12, 2022) and Distribution of Child Pornography (Count 3) (PSR ¶¶ 27-35)**

| | | |
|---|---|---|
| a. | Base Offense Level, U.S.S.G. § 2G2.1(a): | 32 |
| b. | Specific Offense Characteristics: | |
| | Material involved minor who had attained age of 12 years but not attained age of 16 years, U.S.S.G. § 2G2.1(b)(1)(B) | +2 |
| | Commission of sexual act or conduct, U.S.S.G. § 2G2.1(b)(2)(A) | +2 |
| | Knowingly engaged in distribution, U.S.S.G. § 2G2.1(b)(3) | +2 |
| | Use of a computer, U.S.S.G. § 2G2.2(b)(6)(B) | +2 |
| c. | Adjusted Offense Level (Subtotal): | 40 |

**Count Group 2:  Production of Child Pornography and Attempt (Count 2 – July 13, 2022) (PSR ¶¶ 36-44)**

| | | |
|---|---|---|
| a. | Base Offense Level, U.S.S.G. § 2G2.1(a): | 32 |

b.    Specific Offense Characteristics:

Material involved minor who had attained age of 12 years but not attained age of 16 years, U.S.S.G. § 2G2.1(b)(1)(B)    +2

Commission of sexual act or conduct, U.S.S.G. § 2G2.1(b)(2)(A)    +2

Knowingly engaged in distribution, U.S.S.G. § 2G2.1(b)(3)    +2

Use of a computer, U.S.S.G. § 2G2.2(b)(6)(B)    +2

c.    Adjusted Offense Level (Subtotal):    40

**Count Group 3:  Receipt of Child Pornography (Count 4) (PSR ¶¶ 48-58)**

a.    Base Offense Level, U.S.S.G. § 2G2.2(a)(2)    22

b.    Specific Offense Characteristics:

Material involved prepubescent minor who had not attained age of 12 years, U.S.S.G. § 2G2.1(b)(2)    +2

Sadistic or masochistic conduct or other depictions of violence, U.S.S.G. § 2G2.2(b)(4)(A)    +4

Pattern involving sexual abuse or exploitation of minor, U.S.S.G. § 2G2.2(b)(5)    +5

Use of a computer, U.S.S.G. § 2G2.2(b)(6)(B)    +2

Involved 600 or more images, U.S.S.G. §§ 2G2.2(b)(7)(D)    +5

c.    Adjusted Offense Level (Subtotal):    40

Separately, the government agrees that the Guidelines require a three-level increase in offense level under the grouping analysis. *See* PSR ¶¶ 55-58.  The government also agrees that there should be a five-level increase under U.S.S.G. § 4B1.5(b). *Id.* ¶ 59.  Section 4B1.5(b) adds five offense levels if the defendant's offense of conviction is: (i) a covered sex crime, *and* (ii) the defendant engaged in a pattern of activity involving prohibited sexual conduct.  Both apply here.  First, production of child pornography is a "covered sex crime." *See id.* cmt. n. 2 ("covered sex crime" includes "an offense, perpetrated against a minor, under . . . chapter 110 of [title 18], not including trafficking in, receipt of, or possession of, child pornography, or a recordkeeping offense.").  Second, Muller engaged in "a pattern of activity involving prohibited sexual conduct."  Application Note 4(a) defines "prohibited sexual conduct" to

include the production of child pornography. *Id.* cmt. n. 4. Application Note 4(b) further explains that there is a pattern "if, on at least two separate occasions, the defendant engaged in prohibited sexual conduct with a minor." *Id.* Muller made at least four videos of child pornography on two separate occasions with two different victims. *See supra* at 2-4; *infra* at 9. Thus, his conduct qualifies as a pattern of prohibited sexual conduct under U.S.S.G. § 4B1.5(b).

Taking all these factors into consideration and including acceptance of responsibility, the Total Offense Level is 43. PSR ¶¶ 55-62. The government further agrees that Muller's criminal history category is I. PSR ¶ 66. Total Offense Level 43 at CHC I yields a Guidelines range of 360 months for Counts 1 and 2 and 240 months for Counts 3 and 4. PSR at 24. These are the statutory maximums for the charged counts in the indictment: 30 years for 18 U.S.C. § 2251(a), production of child pornography, and 20 years for 18 U.S.C. § 2252(a)(2), distribution and receipt of child pornography.

## IV.    SENTENCING RECOMMENDATION

### A.    Legal Standard

The United States Sentencing Guidelines serve as "the starting point and the initial benchmark" of any sentencing process and are to be kept in mind throughout the process. *See United States v. Carty*, 520 F.3d 984, 991 (9th Cir. 2008); *see also United States v. Kimbrough*, 522 U.S. 85, 108 (2007). The overarching goal of sentencing, as set forth by Congress, is for the Court to "impose a sentence sufficient, but not greater than necessary." *Carty*, 520 F.3d at 991 (citation omitted). In accomplishing that goal, the Court should consider the factors set forth under 18 U.S.C. § 3553(a), which include:

> (1)    the nature and circumstances of the offense and the history and characteristics of the defendant;
>
> (2)    the need for the sentence imposed to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
>
> (3)    the need for the sentence imposed to afford adequate deterrence to criminal conduct;
>
> (4)    the need for the sentence imposed to protect the public from further crimes of the defendant;
>
> (5)    the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and

(6)    the need to provide restitution to any victims of the offense.

**B.    Probation's Recommendation**

Probation has recommended that the Court sentence Muller to a term of imprisonment of 280 months as to Counts One and Two, and 240 months as to Counts Three and Four, all counts to be served concurrently, supervised release of fifteen (15) years as to all counts, to run concurrently, waiving the fine, restitution at an amount to be determined, and a special assessment of $400. PSR at 24.

**C.    Government's Sentencing Recommendation**

The Supreme Court has long recognized that the prevention of sexual exploitation and abuse of children is a "government objective of surpassing importance." *New York v. Ferber*, 458 U.S. 747, 756 (1982). The government's sentencing recommendation reflects, first and foremost, the "surpassing importance" of its solemn obligation and prerogative to disrupt, dismantle, and deter all persons who sexually exploit and abuse children.

Moreover, the Supreme Court has repeatedly recognized that "the use of children as subjects of pornographic materials is harmful to the physiological, emotional, and mental health of the child." *Id.* at 758. "[A]s a permanent record of a child's abuse, the continued circulation itself would harm the child who had participated. Like a defamatory statement, each new publication of the speech would cause new injury to the child's reputation and emotional well-being." *Ashcroft v. Free Speech Coalition*, 535 U.S. 234, 249 (2002).

Recognizing the seriousness of the offense, to promote respect for the law, to provide just punishment for the offense, and to afford adequate deterrence, as well as considering the defendant's history and characteristics, the government recommends that the Court sentence Muller to (i) a term of imprisonment of 420 months; (ii) supervised release for life, to include a suspicionless search condition; (iii) restitution to be determined later; and (iv) a special assessment of $400.

**1.    Muller's History and Characteristics Are Aggravating Factors**

This sentencing memorandum (*see supra* at 2-5) and the PSR describe in detail the charged conduct in this case, which involved the sexual abuse of two minor victims, including hands-on abuse of a fifteen (15) year old boy that Muller recorded and then distributed to another individual. PSR ¶¶ 5-11.

Muller separately solicited and received child pornography from the Uncharged Subject of that individual's nine (9) year old brother.  PSR ¶ 12.

In addition to the heinous charged conduct, the government's investigation identified additional uncharged hands-on sexual abuse by Muller with at least two other minor victims.[33]  Specifically, "[e]vidence from Muller's cellphone extraction [] led to the identification of a third minor uncharged in the Indictment (Minor 3)."  PSR ¶ 13.  "Law enforcement interviewed Minor 3 and learned that Muller met Minor 3 on Grindr and engaged in oral-genital sexual acts with Minor 3 when he was 13-14 years old."  *Id.*  "Muller purchased items for Minor 3, such as THC edible products, a vape and give Minor 3 cash."  *Id.*  "Muller solicited sexually explicit images from Minor 3 and sent CSAM and sexually explicit images of himself to Minor 3."  *Id.*  "Minor 3 stated he tried not to give [Muller] too much personal information for safety reasons."  PSR ¶ 14.  "Muller would sometimes try to threaten Minor 3, to scare him."  *Id.*  "At one point, Muller sent Minor 3 child pornography of other kids."  *Id.*  Muller would also talk about his "family members, like his cousins or nephews, joining in [the sexual activities]."  *Id.*

"[I]n the cellphone extraction, law enforcement [also] located video files of Muller engaging in intentional touching of the genitals and oral-genital sexual acts with the [U]ncharged [S]ubject, who was a 17-year-old minor at the time of the conduct."  PSR ¶ 15.  "The video files captured Muller calling the [U]ncharged [S]ubject a 'good fucking boy,' 'good fucking mutt,' and 'good fucking doggy,' and referencing [Uncharged Subject's] buttocks as 'that little 17-year-old tail.'"  *Id.*  In other words, beyond the serious and horrific charged hands-on conduct, there are multiple instances of Muller sexually abusing additional minor child victims.

[33]  At sentencing, "the court may consider, without limitation, any information concerning the background, character and conduct of the defendant, unless otherwise prohibited by law."  U.S.S.G. § 1B1.4.  Also, "the court may consider relevant information without regard to its admissibility under the rules of evidence applicable at trial, provided that the information has sufficient indicia of reliability to support its probable accuracy."  *Id.* § 6A1.3.  "No limitation shall be placed on the information concerning the background, character, and conduct of a person convicted of an offense which a court of the United States may receive and consider for the purpose of imposing an appropriate sentence."  18 U.S.C. § 3661; *see Concepcion v. United States*, 597 U.S. 481, 491–92 (2022) (a sentencing judge "may appropriately conduct an inquiry broad in scope, largely unlimited either as to the kind of information he may consider, or the source from which it may come") (internal quotations and citation omitted)); *United States v. Vanderwerfhorst*, 576 F.3d 929, 935 (9th Cir. 2009) (judges "may consider a wide variety of information at sentencing that could not otherwise be considered at trial").

Furthermore, Muller's sexual interest in prepubescent children was not limited to the minor victims that he personally abused. In conversations with the Uncharged Subject, Muller repeatedly discussed his desire to harm and abuse other young children, including victims as young as four years old. A sampling of these conversations is as follows:

- "On September 7, 2021, Muller discussed wanting to bring [U]ncharged [S]ubject's 7-year-old cousin into his "puppy harem." PSR ¶ 16. "Muller also discussed wanting [U]ncharged [S]ubject to wear Muller's 4-year-old nephew's underwear." *Id.* "[U]ncharged [S]ubject asked if Muller ever tried anything with his little cousin." *Id.* "Muller replied no, 'he always has his parents around and lol he my nephew' and '4yo rn and can't talk but all healthy hehe.'" *Id.*

- "On October 17, 2021, Muller discussed with [U]ncharged [S]ubject adopting a son so 'we can use and abuse him hehe.'" *Id.* "Muller stated that they could brainwash the cutest kid at a foster home and making him into their sex slave." *Id.*

- "On December 8, 2021, Muller asked [U]ncharged [S]ubject whether he was 18 yet." *Id.* The Uncharged Subject "stated, 'no and that he was 17.'" *Id.* Muller stated, "'Good lol I love fuxking your ass as a minor.'" *Id.* The Uncharged Subject stated, "basically rape," and Muller replied, "defiantly rape" and "underage ass around my cock felt so fuxking good doggy." *See id.*

Separately, Muller has no history of sexual, psychological, or mental abuse. Instead, his parents contributed financially and "his basic material needs were met." *See* PSR ¶ 72. Muller grew up "in a close-knit family" and "he did not witness any domestic abuse nor was he victim of physical, sexual, or verbal abuse." *Id.* He had a normal childhood, participating in tennis, chess, and the science club. *Id.* Muller also did not "have [a] history of mental or emotional problems, and no history of treatment for such concerns." PSR ¶ 77. During the initial state proceedings on these charges, Muller "attempted to trick the state psychologist" during competency evaluation proceedings. *Id.* "[J]ail calls to his sister reflected" that fact, and "his sister attempted to support and guide [Muller] in doing so." *Id.* The state psychologist determined Muller to be competent. *See id.* Muller claimed his daily alcohol consumption

contributed to the charged offenses, but did not provide specifics other than alcohol making him "delirious." PSR ¶ 80.

In short, there are no mitigating factors in Muller's history and characteristics that warrant a departure from the Guidelines, other than the lack of a criminal history. Instead, his background is an aggravating factor as Muller had an idyllic childhood with no history of trauma or abuse. After his arrest for the charged conduct, Muller did not accept responsibility. Instead, he attempted to defraud the state psychologist by lying during his competency evaluation. His lies failed, as the psychologist deemed Muller competent to face accountability for his criminal conduct and pattern of sexual abuse.

### 2.    The Other Section 3553(a) Factors Support the Government's Recommendation

***Proper Guidelines Range.***  As explained above, the correct Guidelines calculation in this case is 360 months for Counts 1 and 2 and 240 months for Counts 3 and 4, *i.e.*, the statutory maximum for each charged count in the Indictment. *See* PSR at 24. Since these are separate and independently charged counts, the Court has discretion to impose consecutive or concurrent sentences of imprisonment. If the Court imposed consecutive sentences, the Guidelines range for Muller's conduct would be the equivalent of a life sentence.

Here, treating each victim and instance of criminal conduct separately and imposing consecutive sentences is appropriate. Muller's conduct constituted separate and independent acts of child sexual abuse that establish a pattern of disturbing and shocking behavior. Muller sexually abused Minor 1 on two instances, recording his sexual abuse with the victim's consent, which he then distributed to another minor. Muller separately solicited and received child pornography of Minor 2, the seven (7) year old younger brother of the Uncharged Subject. The charged conduct is not exhaustive of Muller's history of sexual abuse of young children, which is all relevant conduct under § 3553(a). Muller sexually abused another minor child, Minor 3, whom was 13 or 14 years at the time. PSR ¶¶ 13-14. Minor 3 was scared of Muller and received child pornography from Muller. *Id.* The record is also replete with examples of Muller stating his explicit intent and desire to harm additional minor victims. Muller wanted a 7-year old in his "puppy harem," and discussed wanting to adopt a child so that he could "use and abuse him" as a "sex slave." *See* PSR ¶ 16.

***Factors Supporting the Government's Recommendation.*** Thus, the government's recommended sentence of 420 months is a below-Guidelines sentence that would constitute a downward variance from the correct Guidelines range. The government submits that this requested sentence is "sufficient, but not greater than necessary" to comply with the purposes set forth in 18 U.S.C. §3553. While the government recognizes this is a significant sentence, there are multiple aggravating factors that support the government's recommendation. First, Muller is relatively young, he is a thirty-four (34) year old adult male. A lengthy term of imprisonment is important for both general and specific deterrence, including to protect the victims, their families, as well as the broader community at large, from Muller's dangerous behavior. Second, Muller purposely engaged in a history and pattern of hands-on sexual abuse of minors that he consistently repeated with several different young children, ranging from nine (9) years old to seventeen (17) years old. Third, Muller specifically encouraged another person, the Uncharged Subject, to sexually abuse his seven-year old younger brother. The abuse was documented in a photograph that was subsequently sent to Muller. Fourth, while Muller has accepted responsibility by pleading guilty, he has not otherwise demonstrated remorse. In fact, during the state proceedings, Muller attempted to evade responsibility and culpability for his conduct by lying about his competency status.

The government's recommendation also avoids unwarranted sentencing disparities.[4] For similarly situated defendants, the average length of imprisonment was 345 months, and the median length was 360 months. PSR ¶ 105. The government emphasizes that this data undercounts the relevant point of comparison, as that information is for a single conviction with a primary guideline of U.S.S.G. § 2G2.1 with a Final Offense Level of 43. Here, Muller engaged in multiple and independent acts of child sexual abuse, and he has four separate child pornography convictions, though there is overlap in conduct between certain counts. *See* PSR ¶¶ 27-35.

---

[4] During the last five fiscal years (FY2020-2024), there were 859 defendants whose primary guideline was §2G2.1, with a Final Offense Level of 43 and a Criminal History Category of I." PSR ¶ 105. "For the 859 defendants (100%) who received a sentence of imprisonment in whole or in part, the average length of imprisonment imposed was 345 month(s) and the median length of imprisonment imposed was 360 month(s)." *Id.*

The government's recommendation is also consistent with this Court's recent sentence in another child pornography case, *United States v. Dale Jetton* (23-CR-00290-EMC).[5]  On April 10, 2025, this Court imposed a sentence of 180 months of custody in *Jetton*.  *Jetton*, Dkt. 43.  Muller's criminal conduct is significantly more serious and severe than the conduct in *Jetton*, which involved a one-count conviction for distribution of child pornography.  *See id.*  Unlike *Jetton*, there are multiple instances of Muller engaging in hands-on sexual abuse and harm of minor victims.  Also, unlike *Jetton*, Muller has no history of childhood abuse or any history of psychological or mental conditions.  His parents provided for him, he had a normal childhood, and he is healthy.

***Victim Impact.***  The Court has in its possession several victim impact statements that detail the devastating and long-lasting effect of Muller's conduct.  PSR ¶ 20.  In his own words, Minor 1, who was 15-years old when he met Muller: "I believe [Muller] should face a maximum punishment for the actions he has taken on me and other victims."  *Id.*  "He should not be allowed to roam free, and harm other kids like me."  *Id.*  After Muller's hands-on conduct, Minor 1 "had to have my mom go out with me to take out the trash because I was scared [Muller] was going to hurt me because he knew where I lived."  *Id.*  When Minor 1 learned that Muller "took pictures of [him] without [his] consent while [he] was having sex with [Muller], "it haunted" him "knowing [that his] pictures were on child porn sites and that countless other men have probably seen [him] naked."  *Id.*  Minor 1 had to work with "a rape trauma services worker" who "helped [him] realize it was not [his] fault" because he "was only 15."  *Id.*  Minor 1 believes that "Henry Muller should not be allowed to hurt other kids and be free, the same way he hurt me."  *Id.*

The parents of Minor 1 explained that these crimes have resulted in "severe trauma and anxiety" to the victim, including a PTSD diagnosis that has impacted everyone in the family.  *Id.*  "I never thought a crime so heinous would happen to our family."  *Id.*  "You can not put a price on how his man has destroyed my son."  *Id.*  One parent lost their job "due to excessive absences caring for" Minor 1.  *Id.*  Muller's conduct "forced [the family] to move from our home and [become] homeless" for a period of time.  *Id.*

---

[5] The undersigned government counsel was counsel of record in the *Jetton* matter.

The multiple victim impact statements make it clear that the impact caused by Muller's horrific conduct has been devasting. The sexual abuse suffered because of Muller's conduct has had an immeasurably adverse and lifelong psychological, mental health, and physical impact on victims and their families. *See id.* Those negative effects include severe anxiety attacks, depression, and adverse psychological diagnoses. *See id.* The Court should consider these adverse impacts in its sentencing determination.

**Restitution.** Pursuant to 18 U.S.C. § 2259(c)(3), Muller's convictions are child pornography trafficking offense and thus restitution is mandatory as set forth in 18 U.S.C. § 2259(b)(2). PSR ¶¶ 97-99. The Court must determine the full amount of the victim's losses and shall order restitution in an amount that reflects the defendant's relative role in the causal process that underlies the victim's losses, but which is no less than $3,000. *Id.*

### 3. The Court Should Impose a Suspicionless Search Condition

Finally, given the seriousness of Muller's convictions and conduct, the Court should order a suspicionless search condition upon the defendant's release. Specifically, the government requests the following condition of supervised release (in lieu of Probation's proposed mandatory condition number three, *see* PSR at 27):

> Special Condition (Searches)
> The defendant shall submit his person, residence, office, vehicle, electronic devices and their data (including cell phones, computers, and electronic storage media), and any property under defendant's control to a search by a United States Probation Officer or any federal, state, or local law enforcement officer at any time, with or without suspicion. Failure to submit to such a search may be grounds for revocation; the defendant shall warn any residents that the premises may be subject to searches.

It is "well-established" that "conditional releasees are not entitled to the full panoply of rights and protections possessed by the general public" and in fact "enjoy severely constricted expectations of privacy relative to the general citizenry." *United States v. Kincade*, 379 F.3d 813, 833–34 (9th Cir. 2004) (en banc) (citing Supreme Court cases); *see also United States v. Kriesel*, 508 F.3d 941, 950 (9th Cir. 2007) (noting that those on supervised release have "diminished privacy interests").

Indeed, "those who have suffered a lawful conviction" are properly subject to a "broad range of [restrictions] that might infringe constitutional rights in a free society." *McKune v. Lile*, 536 U.S. 24, 36

(2002).  For that reason, courts regularly uphold supervised release conditions that permit searches without a warrant and without reasonable suspicion.  *See, e.g., Samson v. California*, 547 U.S. 843, 855–57 (2006) (analogizing state parole to federal supervised release and holding that "the Fourth Amendment does not prohibit a police officer from conducting a suspicionless search of a parolee"); *United States v. Cervantes*, 859 F.3d 1175, 1184 (9th Cir. 2017), as amended on denial of reh'g and reh'g en banc (Sept. 12, 2017) (approving "warrantless, suspicionless search condition[]" imposed on supervised release); *United States v. Betts*, 511 F.3d 872, 876 (9th Cir. 2007) (noting "[t]here is no sound reason for distinguishing parole from supervised release with respect to [suspicionless search conditions]").

District courts are well within their discretion to impose suspicionless search conditions in appropriate circumstances.  *See Betts*, 511 F.3d at 876 ("[a]fter *Samson*, there is no room for treating the search condition in this case as an abuse of discretion.").  "A district court enjoys 'significant discretion' in determining the conditions of supervised release for criminal defendants, including the authority to impose restrictions that infringe on fundamental rights."  *United States v. Gibson*, No. 4:14-CR-00217-JD-1, 2016 WL 6873466, at *1 (N.D. Cal. Nov. 22, 2016) (citing *United States v. Weber*, 451 F.3d 552, 557 (9th Cir. 2006)).  Based on the severity of Muller's conduct and to protect the community, the Court should impose a suspicionless search condition.

## VI.    CONCLUSION

For the foregoing reasons, the government respectfully requests that the Court order Muller to: (i) a term of imprisonment of 420 months; (ii) supervised release for life, to include a suspicionless search condition; (iii) restitution to be determined later; and (iv) a special assessment of $400.  We hope that our prosecution has provided some measure of justice and closure for the victims, their families, and the community.

DATED:  October 23, 2025

Respectfully submitted,

CRAIG H. MISSAKIAN
United States Attorney

*/s/ Roland Chang*
ROLAND CHANG
Assistant United States Attorney